May it please the court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Ranjit Singh. The sole issue in this case is whether Mr. Singh acted with due diligence in discovering the ineffective assistance of his former attorney, Jagdeep Singh Sekom, who, I'm sure the court is aware, was recently convicted in the U.S. District Court for the Eastern District of California of conspiring to make false statements in asylum proceedings just like this. Is that a matter of record? It is not a matter of record, Your Honor. Then please don't discuss it. All I can say, Your Honor, is the government referenced those proceedings in its reply brief to the court. I would say the same thing to the government. Okay. The issue in this court, like I say, is the issue of due diligence. We presented recently a 28-J letter that cites the case Garamani v. Gonzalez. The cite on that, Your Honors, is 498 F3rd 993. I think that case is directly on point because it discusses the standard for determining whether there's due diligence in a case like this where there were multiple attorneys involved. And basically what the holding of the court there is that an alien establishes due diligence as long as he is actively pursuing his case through counsel. And in this case, there's no doubt that Mr. Singh was actively, all along, actively pursuing his case through counsel. For the four years? That's correct, Your Honor. Yes. Could you detail for me how he actively pursued each of those four years? Yeah. I mean, what matters in this case, Your Honor, is whether he had, according to Garamani, what really matters is whether he had retained counsel and put his trust in counsel, that counsel would be pursuing the case. This begins, I suppose, the Board of Immigration Appeals denied his case in October of 1999. He didn't learn about that from his counsel, Mr. Saikon, until June of 2000, when Mr. Saikon told him there was nothing that he could do for him. He goes on to say that he requested a copy of his file, but he didn't receive a copy of his file from Mr. Saikon until November of 2000. Immediately thereafter, he transferred what he had received, his file, from Mr. Saikon to an office known as Roman and Singh. And in December of 2000, Roman and Singh filed a motion to reopen that is set forth in the record here at pages 347 and the pages thereafter. And according to Mr. Singh's declaration, the office of Roman and Singh told him that this could take years to be resolved, and he told him just to simply wait. And he waited. In addition to waiting, though, he relied on Roman and Singh to file a petition under Section 245I of the Immigration and Nationality Act. He waited for how long? He waited for years, Your Honor, waiting for a decision on that case. But, again, I think what matters here, and I think this is... What did he do after a year? After that, Your Honor? He said he waited for a year. Well, at that point... And then? At that point, Your Honor, he, according to his declaration, he says that he was tired of waiting. He felt like his lawyer wasn't keeping him informed of what was happening. He felt like it was taking too long. A friend of him invited him to, you know, visit our office, and he came to our office at that point. He entered our office. I can get you the exact date here. In March of 2005. As far as I can see, the difference between your case and the case you rely on is that in that case, you know, there were about four or five lawyers. In that way, maybe similar, but... In Garamani? In that case, yeah. There were three. In that case, you know, the petitioner, I mean, changed lawyers, it seems like, every few months, right? No, not at all. Sure. As soon as, you know, something didn't happen or he saw something, his, in other words, his frequency in his acting was at a much more quickened pace than your client. No. There was not a long period of inactivity where, you know, he waited years and nothing happened and he still waited years. I think the point of the case, Your Honor, is that aliens like Mr. Singh, they oftentimes, and quite reasonably, entrust their attorneys to handle their cases. They're not in a position to second guess, especially an immigrant from a foreign land arriving here in the United States, they're not in a position to second guess normally the actions of their attorneys. So the rule in this circuit is that, you know, under Garamani, if an alien like Mr. Singh has retained counsel and that attorney tells him that he's actively pursuing the case and that everything is going according to plan and that he need not worry, an alien like Mr. Singh can reasonably rely on that, and insofar as he's reasonably relying on that, the rule is that he is, in fact, acting with due diligence. And I think that's exactly what happened in this case. Let me ask you a question regarding the scope of review. On the issue of whether he acted with due diligence, is our review for abuse of discretion or is it de novo? I believe it's de novo. Why do you say that? It's not clear to me, and I thought that Garamani should set forth a standard on that, but it doesn't really set forth a standard. Because the factual basis about whether the client, in the circumstances, was reasonably active, confronted his attorney or did not, sounds to me like a fact-intensive question. And so long as the BIA, the IGA and the BIA have a reasonable basis to arrive at the conclusion that there was not due diligence, if it were abuse of discretion, you'd be in a bad way. I could be in a bad way. Even in that situation, Your Honor, I think the court would have to remand, because obviously the Garamani case came out after the board's decision in this case. The standard that it sets forth is not one that the board applied in this case. So even if you're correct that you would review for abuse of discretion, as a threshold matter, you have to make sure that, in fact, the board is applying a correct legal standard. And in this case, it didn't. It didn't apply the Garamani standard because the Garamani standard hadn't been announced. Is it true that during the period that your client was waiting for a response from his attorney, he did nothing? He didn't call the attorney? There's nothing in the record? No. That's not true. The record really isn't very clear on that point. We know that he was repeatedly in contact with that attorney, and he was frustrated by the attorney's failure to keep him informed of the progress of the case, because ultimately that's what led him to turn to alternate counsel. Exactly how often he was communicating with the lawyer, we can't say. It's not reflected in the record. Okay. I have no further questions. You want to save the rest of my time for rebuttal? I will save the rest of my time for rebuttal. Okay. Would you do that, please? Good morning. May it please the Court, Jamie Dowd on behalf of the Respondent Attorney General. I'd like to address a couple of the Court's questions to start. As counsel just pointed out, Mr. Singh was notified in June 2000 that his case had been dismissed by the Board. He requested his file in order to have Attorney Singh represent him following Mr. Seekon's representation. That file was received by Mr. Singh personally in November of 2000, and he states that he then forwarded – he states that he didn't look at the file and then forwarded it on to Attorney Singh, where it sat for, as the Court pointed out, four years, with nothing happening in the case. The only thing – Well, it does hold what Mr. Joe says it does. He accurately states the holding. And in that – why is that holding? Why isn't it reasonable for an immigrant like Mr. Singh here to rely on his lawyer? Well, as the Court pointed out, Your Honor, there's a difference in that case in that there was action every few months, as opposed to here where the case sat for four years with an attorney. And as the Court pointed out – Attorney told him it will take a long time. Did Attorney tell him that? That's what he says. But the only evidence in the record is his statement that he had repeated contact. There's no other evidence in the record as to any specific contact that he had with Attorney Singh. You mean the position statement? Mr. Singh's statement that he had repeated contact with Attorney Singh over those four years. Did he give any details as to the content of those contacts, or is this in an affidavit that might well have been prepared by counsel? In an affidavit. In all it says, I have the quote, repeated contact. There's no specifics laid out as to what the contact was, what he asked, what the attorney told him, et cetera. And the record is clear that Mr. Singh – go ahead. Is there any statement that in those repeated contacts the attorney told him, I told you it was going to take a long time, it's going to take a long time, don't call me back until I call you? There's nothing in the record to that effect, no, Your Honor. Like I said, there's just the reference to repeated contact, and I believe what counsel previously stated that, you know, he said it will take a long time. Excuse me. Go ahead. In Garamaya, wasn't it about a six-month period of time as opposed to four years, or at least a significantly less period of time than four years? It was at least months as opposed to years, correct. Can we consider this, I think, a matter of common knowledge that this fellow is from India where it's commonly known that the judicial process takes years and years and years. And, for instance, we just saw in the paper that Bhopal crime was, you know, the case was finally tried, what, 35 years later? It took that long to get to trial. I mean, it's very common in India that, you know, people don't get a trial until they fully serve their sentence. I mean, everybody knows that the judicial system, the law is very, very slow. It's slower than, you know, Dickens. But anyway, so a person who comes from that kind of culture, isn't it understandable that if the attorney says it will take a long time, he could interpret that to mean years? Well, I think the question here is whether the board could reasonably conclude that four years of inaction does not constitute due diligence. So I think the Court should focus more on whether the board's conclusion was reasonable. Well, do you think the board should take those kinds of cultural considerations into account? Well, none of that is in the record here, Your Honor, so. Should it be in the record? I mean, should they have taken it into account? Well, if it were to be taken into account, it's something that counsel would have presented in the motion to reopen. And it's not in the record. It wasn't presented. But the motion to reopen was barred by time anyway. Correct. But there was an opportunity to show that tolling should apply and that diligence was pursued. And so any evidence to that effect could have been presented in the motion to reopen. What were the grounds for the motion to reopen, again? Ineffective assistance against Attorney Seekon, the first attorney, that represented him before the immigration judge. But the board only focused on the untimeliness, equitable tolling, due diligence issues, as Mr. Joe pointed out. Those are the only issues here. The board did not address the ineffective assistance of counsel claims. But I wanted to just, because I think the court was getting to this earlier, to point out that, or Mr. Joe pointed out that he relied on his attorney's representations. However, this court has said that that reliance must be reasonable. And as I stated previously, the court should look at whether it was reasonable for the board to conclude that his inaction for those four years, notwithstanding whether his attorney said at the outset this will take a while, was due diligence on his part. It also bears noting that he was able to obtain his file in 2000, but then claims that he was unable to obtain the file in 2005 when he retained current counsel. But he does not explain why he did not seek the file from Attorney Singh, who had the file, because he personally received the file and sent it to Attorney Singh. And Mr. Jobe knows better than to rely on those secondhand files. Well, he actually went to Mr. Seekon, who had originally had the file, but had sent it to Mr. Singh, who sent it on to Attorney Singh. So there's nothing in the record to indicate why the file was pursued to be received from Attorney Seekon, as opposed to the attorney who had had it for four years prior to that. So I think that that's important to note. But our review here is for abuse of discretion. Correct, Your Honor, abuse of discretion. As to whether the board's conclusion that due diligence was not shown here was an abuse of its discretion, arbitrary or rational conclusion. Unless the Court has further questions. No, thank you. Mr. Jobe. Yes, Your Honor. If you were asked, and I now do ask you. Yes. Where could I find the most authoritative discussion of what is our correct scope of review in this case? You're not going to find anything, as far as I can tell, that tells you specifically what is the standard of review with respect to this specific question of due diligence. I couldn't find anything. How about those cases you cited? Mr. Armani, it doesn't say. It's frustrating, but it doesn't say. We know that generally we review motions to reopen for abuse of discretion. But then, you know, that doesn't answer the question completely, because along the way in reviewing a motion to reopen, obviously we review court reviews, legal questions, de novo, with Chevron deference, et cetera. This particular question, it's unclear to me what the standard of review that the Court would apply is. Now, going back to this four-year delay, I'm amused by it somewhat. Because, I mean, for starters, you know, what the record says on page 137 is that Juspreet Singh told me that the process of getting an answer on this motion to reopen, quote, would take a long time and I should wait for further correspondence from his office or the INS. He acted upon that, we say reasonably. Government says it's not reasonable. But wait a minute. That's slightly inconsistent with, quote, repeated contacts. I mean, one- Even after that, he had repeated contacts. That's true. But- No, no. But if he says, on the one hand, the lawyer told me to sit tight and he would send further correspondence to me-  Then that would argue that he'd have no reason to make repeated contacts with the office. No, he had repeated contacts with the office because he was doing other things in addition to the motion to reopen. For example, he says in April of 2001, the attorney filed a petition for him, an application for an alien labor certification, so that he could be grandfathered in under 245I. So he had further contacts with the office. But with respect to the motion to reopen, that's the key part of this case, he was told, sit back and wait. Now, the government says, well, he waited too long. Oh, my God, four years. No one would wait for four years. Well, the BIA denied this guy's- The immigration judge denied this guy's case in March, I think, of 1996. It took the board three and a half years to issue a decision on it. This appeal was filed in this court in 2006, in 2010. If he calls my office, I can tell you what I would say. Nothing's happening. I'll let you know when something happens. The wheels of justice do oftentimes turn slowly, especially in these immigration cases. And this case bears out that four years is not an unreasonable period of time for one of these motions to be adjudicated. It took three and a half years for the BIA to decide his original appeal, and it's been four years that this case has been pending in this court. So for the government to come in here and say it's unreasonable for him to have been waiting for four years when his lawyer told him to wait, that's just not true. It's just not borne out by the reality of this case itself. Now, this thing about us obtaining the file from Jaspreet Singh, again, it's a red herring. Yeah, there was a file sent to Jaspreet Singh. It's the same file that Jagdeep sent us. It's an incomplete file. It didn't have the board's decision. We tried to get the board's decision from Jaspreet. We tried to get the file from Jagdeep. We tried to get the file from the Board of Immigration Appeals. We tried to get the file from USCIS. We pursued every manner of getting the file. We asked the Board of Immigration Appeals to please expedite our FOIA request. We asked USCIS to expedite the FOIA request, and they told us no. We didn't get the complete file until November of 2005, and that's the very first time that we were able to see the Board of Immigration Appeals' decision in this case. And he filed his motion to reopen within 90 days of that receipt of the file. That is a classic case of due diligence. We can't file a motion to reopen a case until we see the decision that we're seeking to reopen. We didn't get that decision until November of 2005. If there are no further questions. I think we have. Thank you very much, Mr. Jordan. Thank you, Your Honor. The case of Ranjit Singh v. Eric Holder will be submitted.
judges: Reade, Tashima, Bea